ANDREW J. SHAFFER, plaintiff in error, *vs.* JOHN A. HUFF, defendant in error.

1. Where H. is indebted to S., and to secure him for the debt due, and for a further advance of money made by him to H., H. and his wife, with the approval of the Ordinary, convey the homestead which had been set apart for the benefit of the family of H. to the creditor, and he, at the same time, takes the notes of the husband for the debt, and executes a bond to make titles to him for the same land, upon the payment of the notes:

*Held*, That the whole transaction constitutes nothing more than a mortgage, and the rights of the beneficiaries of the homestead arising out of these facts can be set up by the husband in an action against him by the creditor to recover the land.

2. The fact that the creditor and the husband, on the maturity of the notes, agree between themselves, without the consent or approval of the wife or the Ordinary, to cancel the bond and the notes, does not deprive the wife and children of their rights under the agreement.

Equitable mortgage. Ejectment. Husband and wife. Homestead. Before Judge RICE. Gwinnett Superior Court. March Term, 1873.

Shaffer brought complaint against Huff for two hundred and sixty acres of land, lying in the seventh district of the county of Gwinnett. The defendant pleaded as follows:

1st. The general issue. 2d. That he holds plaintiff's bond, conditioned to make titles to the land upon the payment of two promissory notes; that said notes have been discharged and taken up. 3d. That the deed under which the plaintiff claims was made and intended to be used simply as a security for the loan of money made by plaintiff to defendant, the amount not being more than one-third the value of the land. 4th. That the land in controversy was set apart, under the homestead laws, to the defendant as head of a family, and thereby vested in his wife and children, and as no part of the consideration of the deed was the debt of the wife, the deed is void.

The evidence made the following case: On December 3d, 1868, the land in controversy was set apart to defendant as a

homestead for himself and family.   On February 16th, 1870, the defendant and his wife, with the consent and approval of the Ordinary, for the alleged consideration of $415 22, conveyed said property to the plaintiff.   On the same day the plaintiff executed a bond conditioned to reconvey said land to defendant upon the payment of two promissory notes, one for $212 92, and the other for $202 30, both to become due on December 1st, 1870.   At the date of the deed the defendant was indebted to the plaintiff the amount of the consideration, less $100 00, according to defendant's evidence, and less $200 00, according to plaintiff's statement.   This additional advance was made in consideration of the deed.   The plaintiff swears that the conveyance was absolute, the defendant asserts to the contrary, and alleges that the deed and bond for titles together constitute an equitable mortgage.   On February 17th, 1871, the defendant executed an instrument releasing the plaintiff from any obligation on said bond, canceling the same, and agreeing to deliver it up on demand. The alleged consideration of this document is the failure to meet the notes at maturity, and their delivery to the defendant.   The defendant testifies that he signed this relinquishment under an agreement that one Vaughan was to pay to the plaintiff the amount of his indebtedness, and the latter was to convey the title to the former, that Vaughan was then to give to the defendant his bond for titles, conditioned upon the repayment of the money paid to the plaintiff; that at the time of signing said instrument and of receiving said notes, he supposed this arrangement had been perfected, and that nothing remained to be done but the execution by Vaughan of said bond ; that he refused to part with plaintiff's bond until that of Vaughan was substituted, and consequently yet has it.

Joseph P. Brandon testified, that in January, 1870, plaintiff and defendant called on him for the purpose of borrowing money, and proposed to give a lien on the land in dispute to secure the repayment of the same; that he did not recollect who the money was to be borrowed for; that not having the

funds to lend no contract was entered into; that plaintiff proposed to give the lien, as he claimed to hold the title.

Much conflicting evidence was introduced upon the above points unnecessary here to be set forth.

Under the charge of the Court, the jury returned a verdict for the defendant. The plaintiff moved for a new trial upon the following grounds, to-wit:

1st. Because the Court erred in charging the jury as follows: "A sale of property by one person to another, and an obligation by the latter to reconvey the same on certain conditions, when the transaction creates or recognizes as existing the relation of debtor and creditor between the parties is a mortgage. A mortgage is only a security for debt and passes no title."

2d. Because the Court erred in charging the jury as follows: "If the relation of debtor and creditor existed between the parties at the time of the transaction in which the deed and bond for titles were executed, and the object of the transaction was to secure the payment of the debt, then the deed and bond for titles created only a mortgage and passed no title. In such case the deed and bond for titles constitute but one instrument, and must be construed together, and the defendant and his wife, both being parties to the transaction, the delivering up and cancellation of the bond for titles by the husband, did not change or destroy the character of the transaction, 'once a mortgage always a mortgage.' "

3d. Because the Court erred in charging the jury as follows: "If the deed of the husband and wife, though made under the approval of the Ordinary, and the bond for titles to the husband created a mortgage, then the cancellation or relinquishment by the husband, of the bond, did not change the character of the transaction; and the instrument being only a mortgage, the homestead vesting the title, or rather the beneficial use of the property in the wife for her use and that of her children, prevails over the mortgage, and the plaintiff has 'no title in himself on which he can recover as against the homestead set apart for the use of the defendant

and his family.' The defendant can set up the homestead set apart for his family as a defense to plaintiff's action ; and if the deed on which plaintiff relies, taken in connection with the bond, was only a mortgage, plaintiff cannot recover."

4th. Because the Court refused to charge the jury as requested by plaintiff's counsel, in writing, "That the rights of the wife under the homestead, or under section 1773 of the Code, are not in controversy in this case. This is an action of ejectment when the legal title to the land in dispute is the only question, and must prevail ; and if the legal title was in the plaintiff at the time the suit was instituted, he is entitled to recover."

5th. Because the verdict is contrary to the law and to the evidence.

A new trial was refused, and the plaintiff excepted.

N. L. HUTCHINS ; J. N. GLENN, for plaintiff in error.

F. F. JUHAN ; CLARK & PACE, for defendant.

McCAY, Judge.

1. There can be no question that the first transaction (the advancement of the money, the taking of the deed, and the giving of the bond,) was, whatever may have been the words used by the parties, only intended to be the securing of Mr. Shaffer for the money he had due him from Mr. Huff, and the additional advance made by him at the time. It is true that the plaintiff says it was intended to be an absolute deed, but the defendant says just the contrary, and the transaction has all the marks by which Courts usually determine such instruments to be not deeds, but mortgages. The land is worth more than the amount; the notes given for the repurchase are the same as the amount due, and the grantor remained in possession. The testimony of Mr. Brandon is also in favor of this view. At any rate, the evidence is sufficient, abundantly, to justify the verdict of the jury on this point. Nor does the fact that the bond for titles was to the husband, and not

to the husband and wife, in terms, alter the matter. The husband, is the trustee of the wife for any separate estate she may have, which he gets into possession if she have no trustee, and when he took the bond he was only a trustee for her. Had he paid the notes, it will hardly be contended he would not have taken the land for the use of his wife and children just as it was before it was *deeded* to the plaintiff. If the transaction was, as seems pretty clear from the evidence, a mere arrangement to secure the plaintiff in the money the husband owed him, and which he advanced, *then*, whatever the terms of the bond, on the payment of the money, the title would, by operation of law, be again what it was before, to-wit: a homestead for the wife and children.

2. Nor could the plaintiff and the husband, by any arrangements between themselves for the cancellation of the bond, affect the wife's rights. The plaintiff had full notice of her rights, and when he took up his bond he well knew that she was the true beneficiary of the land. If the homestead provision of the law is to have any sacredness at all, such a transaction as this record discloses should be looked at with great suspicion, and we are not disposed to be astute in finding objections to a verdict of this kind. The most that can be said for the plaintiff, under the facts, is that he has a lien on the land for his money. If the land were not a homestead, this would be clearly so. But we see serious difficulties in the way of making the transaction good, even as a mortgage, on the homestead. The Ordinary has not approved the deed as a mortgage. Perhaps he would not have approved it had he known the facts, to-wit: that the object was not in fact to sell and buy another homestead, but to pledge the homestead for money borrowed, and already due by the husband. The law only authorizes an alienation with the approval of the Ordinary. For myself, I am of opinion that the Ordinary ought in no case to consent, until he is perfectly satisfied that the funds produced by the sale will be promptly reinvested in another homestead. The object of the law is to provide a home for the family against the improvidence of the husband.

This object is but poorly attained, if the parties may sell and waste the proceeds. It is the duty of the Ordinary to see to the object of the parties and not to approve unless he is satisfied the true objects of the statute will be carried out.

Judgment affirmed.